SO ORDERED,

*[signature]*

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: February 3, 2020**

The Order of the Court is set forth below. The docket reflects the date entered.

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

LINDA HAYS MCCOY,                                CASE NO. 07-02998-NPO

DEBTOR.                                          CHAPTER 7

IN RE:

LINDA HAYS MCCOY,                                CASE NO. 18-01569-NPO

DEBTOR.                                          CHAPTER 7

LINDA HAYS MCCOY                                 PLAINTIFF

VS.                                              ADV. PROC. 19-00019-NPO

MISSISSIPPI DEPARTMENT OF REVENUE                DEFENDANT

**MEMORANDUM OPINION AND ORDER ON: (1) MOTION TO DISMISS;
(2) MOTION TO REQUEST TO AMEND COMPLAINT; (3) REQUEST FOR
MOTION TO AMEND ADVERSARY COMPLAINT; (4) MOTION TO REQUEST
SHOW CAUSE; (5) MOTION TO SHOW CAUSE (2015 TAX AND UNLAWFUL
COLLECTION); AND (6) REQUEST FOR MOTION TO REOPEN BANKRUPTCY**

This matter came before the Court for hearing on January 17, 2020 (the "Hearing") on the Motion to Dismiss (the "Current Motion to Dismiss") (Current Adv. Dkt. 15)[1] filed by the Mississippi Department of Revenue (the "MDOR"); the Memorandum in Support of Motion to Dismiss (Current Adv. Dkt. 16) filed by the MDOR; the Answer to Motion to Dismiss (Current Adv. Dkt. 23) filed by the Debtor, Linda Hays McCoy ("McCoy"); the Plaintiffs Memorandum to Support Claims (the "Brief") (Current Adv. Dkt. 24) filed by McCoy; and the Reply to Plaintiff's Response to Motion to Dismiss (Current Adv. Dkt. 32) filed by the MDOR in the Current Adversary.   Also before the Court at the Hearing were the Motion to Request to Amend Complaint (the "Motion to Amend I") (Current Adv. Dkt. 25) filed by McCoy; the Response to Motion to Request to Amend Complaint (Current Adv. Dkt. 31) filed by the MDOR; the Mississippi Department of Revenue's Amended Response to Debtor's Motion to Amend I (the "Amended Response to Motion to Amend I") (Current Adv. Dkt. 119) filed by the MDOR; the Request for Motion to Amend Adversary Complaint (the "Motion to Amend II" or together with the Motion to Amend I, the "Motions to Amend") (Current Adv. Dkt. 48) filed by McCoy; the Mississippi Department of Revenue's Response Opposing Debtor's Motion to Amend II (the "Response to Motion to Amend II") (Current Adv. Dkt. 118); the Amended Complaint to

---

[1] Citations to the record are as follows:   (1) citations to docket entries in adversary proceeding number 19-00019-NPO (the "Current Adversary") are cited as "(Current Adv. Dkt. #)"; (2) citations to docket entries in bankruptcy case number 18-01569-NPO (the "Current Case") are cited as "(Current Case Dkt. #)"; (3) citations to docket entries in bankruptcy case number 07-02998-NPO (the "Prior Case") are cited as "(Prior Case Dkt. #)"; and (4) citations to docket entries in adversary proceeding number 08-00175-EE (the "Prior Adversary") are cited as "(Prior Adv. Dkt. #)".   For clarification, defined terms that begin with "Current" and "Prior" refer to matters before the U.S. Bankruptcy Court for the Southern District of Mississippi unless otherwise stated. If a matter involves another court, the definition will reflect the name of that court.

Determine Dischargeability of Debt (the "Proposed Amended Complaint") (Current Adv. Dkt. 117) filed separately by McCoy but treated by the Court as an exhibit to the Motions to Amend (Current Adv. Dkt. 123); the Motion to Request Show Cause (the "Motion to Show Cause I") (Current Adv. Dkt. 26) filed by McCoy; the Response of Mississippi Department of Revenue in Opposition to Motion to Request Show Cause Hearing (Current Adv. Dkt. 39) filed by the MDOR; the Response of Linda Hays McCoy to the Mississippi Department of Revenue's Opposition to Motion to Request Show Cause Hearing (Current Adv. Dkt. 47) filed by McCoy; the Mississippi Department of Revenue's Amended Response to Debtor's Motion to Show Cause I (Current Adv. Dkt. 120); the Motion to Show Cause (2015 Tax and Unlawful Collection) (the "Motion to Show Cause II" or, together with the Motion to Show Cause I, the "Motions to Show Cause") (Current Adv. Dkt. 84) filed by McCoy; and the Mississippi Department of Revenue's Response to Motion to Show Cause (2015 Tax and Unlawful Collection) (the "Response to Motion to Show Cause II") (Current Adv. Dkt. 93) filed by the MDOR in the Current Adversary.   Finally, also before the Court is a contested matter initiated by McCoy in the Prior Case.   More specifically, before the Court are the Request for Motion to Reopen Bankruptcy (the "Motion to Reopen") (Prior Case Dkt. 44) filed by McCoy; the Motion in Support of Linda Hays McCoy to Reopen 2008 Bankruptcy Case (Prior Case Dkt. 47) filed by McCoy; and the Response to Debtor's Request for Motion to Reopen Bankruptcy (Prior Case Dkt. 48) filed by the MDOR.   At the Hearing, McCoy represented herself,[2] and Sylvie D. Robinson and John S. Stringer represented the MDOR.   The MDOR introduced into evidence two (2) exhibits marked as "DOR Exhibit 1" and "DOR Exhibit

---

[2] *See infra* note 4.

2."   After considering the pleadings and the briefs filed by the parties, the Court finds as follows:[3]

## Jurisdiction

The Court has jurisdiction in this post-discharge adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).

## Introduction

The Current Adversary is the second adversary proceeding brought by McCoy, here acting *pro se*,[4] in her effort to discharge unpaid state income taxes for the years 1993 through 2000.   In the Prior Adversary filed by McCoy against the Mississippi State Tax Commission ("MSTC"),[5] McCoy voluntarily dismissed with prejudice her dischargeability claims for the tax years 1993

---

[3] The following findings of facts and conclusions of law are made pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[4] In the Current Case, McCoy is represented by her bankruptcy counsel, Frank H. Coxwell ("Coxwell").   In the Prior Case and in the Prior Adversary, she was represented by counsel.   In her multiple appeals of the decision reached in the Prior Adversary, she was represented by counsel before the U.S. District Court for the Southern District of Mississippi (the "District Court") in Civil Action No. 3:09-cv-575-HTW-LRA and the United States Court of Appeals for the Fifth Circuit (the "Fifth Circuit") in No. 11-60146.   In her appeal to the United States Supreme Court, she filed a petition for a writ of certiorari in No. 11-1469 *pro se* but later retained Texas counsel to file a corrected petition on her behalf.   *Corrected Petition for a Writ of Certiorari, McCoy v. Miss. State Tax Comm'n*, 2012 WL 2048276 (2012).   Only in the Current Adversary has McCoy in fact represented herself without the benefit of counsel.   (*See* Order Dismissing Show Cause Order, Current Adv. Dkt. 19) (finding that McCoy initiated Current Adversary without any assistance from an attorney or other legal professional).   Coxwell is not representing her in the Current Adversary.

[5] In 2010, the MSTC was renamed the MDOR.   Miss. Code Ann. § 27-3-4.

through 1997 and tax year 2000, and the Court[6] ruled in favor of the MSTC and against McCoy on her dischargeability claims for the tax years 1998 and 1999, *McCoy v. MSTC (In re McCoy)*, Adv. Proc. 08-00175-EE, 2009 WL 2835258 (Bankr. S.D. Miss. Aug. 31, 2009) (the "Prior Adversary Opinion"). Aggrieved, McCoy appealed the Court's ruling to the District Court in *McCoy v. MSTC (In re McCoy)*, Case No. 3:09-cv-575-HTW-LRA, 2011 WL 8609554 (S.D. Miss. Feb. 8, 2011) (the "Prior District Court Opinion"), and then to the Fifth Circuit in *McCoy v. MSTC (In re McCoy)*, 666 F.3d 924 (5th Cir. 2012) (the "Prior Fifth Circuit Opinion"). Both appellate courts affirmed this Court's ruling in favor of the MSTC and against McCoy. McCoy then filed a petition for a writ of certiorari, which the Supreme Court denied, *McCoy v. MSTC*, 568 U.S. 822 (2012). In the Current Adversary, McCoy reasserts the claims for tax years 1993 through 1997 and tax year 2000, which she agreed to dismiss with prejudice in the Prior Adversary, and asks this Court to revisit and reverse the Prior Adversary Opinion dismissing her claims for tax years 1998 and 1999 for failure to state a claim as well as the appellate decisions of the District Court and the Fifth Circuit affirming the Prior Adversary Opinion. The MDOR argues that McCoy's claims in the Current Adversary are barred by the doctrine of res judicata or, in the alternative, that her claims should be dismissed as a matter of law in light of the Prior Fifth Circuit Opinion.

In her Motions to Amend, she seeks permission to broaden the scope of her dischargeability claim to include tax liabilities for the years 1993, 2009, and 2010, as well as interest on her tax liabilities for the years 1993 through 2000. Her unpaid tax liabilities for the years 2009 and 2010

---

[6] The Prior Case, the Prior Adversary, and the Current Case were before U.S. Bankruptcy Judge Edward Ellington, now retired. The Current Case was reassigned on December 1, 2018, and the Prior Case was reassigned on August 6, 2019, both to the above-signed bankruptcy judge. The Current Adversary was assigned to the above-signed bankruptcy judge when it was commenced.

arose after the MDOR learned that McCoy had embezzled funds and then used the unreported income to gamble. For clarification, references to "tax liabilities" in this Opinion include the underlying tax, interest, and penalties unless noted otherwise, and McCoy's tax liabilities for the years 1993 through 2000 are referred to collectively as her "Tax Debt."

In her Motion to Show Cause, McCoy also asks the Court to award sanctions against the MDOR for its alleged violations of the discharge injunction and the automatic stay. Finally, McCoy asks the Court to reopen the Prior Case.

### Facts

To provide context to the MDOR's res judicata argument, the Court begins its findings of fact with a discussion of the procedural history of the Prior Case and the Prior Adversary. These facts, as well as those related to the Current Case and Current Adversary, largely are undisputed by the parties.

### A.    Prior Case

The Current Case is not McCoy's first bankruptcy case. On September 25, 2007, McCoy commenced the Prior Case by filing a voluntary chapter 7 petition for relief. In Schedule E: Creditors Holding Unsecured Priority Claims filed in the Prior Case, McCoy listed a debt to the MSTC in the amount of $303,321.34, consisting of unpaid state income taxes for the years 1993 through 2000. (Prior Case Dkt. 3 at 10). On January 23, 2008, McCoy was granted a discharge of her pre-petition debts under 11 U.S.C. § 727,[7] subject to the exceptions found in § 523(a). (Prior Case Dkt. 10). Creditors received no distribution, and her case was closed as a no-asset

---

[7]    Unless otherwise noted, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code.

case. (Prior Case Dkt. 11). Shortly thereafter, the Court reopened the Prior Case to allow McCoy to commence a post-discharge adversary proceeding against the MSTC. (Prior Case Dkt. 14).

**B.    Prior Adversary**

McCoy initiated the Prior Adversary against the MSTC on December 31, 2008. (Prior Adv. Dkt. 1). In her Second Amended Complaint to Determine Dischargeability of Debt (the "Prior Complaint") (Prior Adv. Dkt. 14), McCoy asked the Court to declare that her state income liabilities for the tax years 1993 through 2000 had been discharged in her Prior Case pursuant to § 727. (Prior Adv. Dkt. 14).

The MSTC filed a Motion to Dismiss (the "Prior Motion to Dismiss") (Prior Adv. Dkt. 20) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"),[8] arguing that § 523(a)(1)(B)(i) excepted from discharge McCoy's pre-petition tax liabilities for those tax years. Under § 523(a)(1)(B)(i), a discharge granted to a chapter 7 debtor does not discharge a tax debt with respect to which a return "was not filed or given." 11 U.S.C. § 523(a)(1)(B)(i). MSTC argued that the Prior Complaint did not contain sufficient factual allegations to show that McCoy filed a qualifying tax return within the meaning of § 523(a)(*),[9] which defines the term "return" as a return that satisfies "the requirements of applicable nonbankruptcy law (including applicable filing requirements)." (Prior Adv. Dkt. 34 at 4). According to the MSTC, the applicable filing requirements in § 523(a)(*) included the requirement in section 27-7-41 of the Mississippi Code

---

[8] Rule 12(b) is made applicable to adversary proceedings by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

[9] This citation uses the asterisk employed by the Fifth Circuit to cite the unnumbered, hanging paragraph that immediately follows § 523(a)(19)(B)(iii).

that a state income tax return be filed on or before April 15th of each year.[10]   Miss Code Ann. § 27-7-41 (2013).   Yet McCoy failed to file state income tax returns for the years 1993 through 1997 and 2000 and filed tax returns for the years 1998 and 1999 late without an extension.

Before the Court had an opportunity to rule on the Prior Motion to Dismiss, the parties resolved their dispute regarding the dischargeability of McCoy's tax liabilities for tax years 1993 through 1997, and tax year 2000, by entering into the Agreed Order of Dismissal (the "Agreed Order") (Prior Adv. Dkt 29).   Approved by the Court, the Agreed Order provided, as follows:

1.   The pre-petition taxes owed by [McCoy] for tax years 1993, 1994, 1995, 1996, 1997, and 2000 were not discharged by this Court's order of discharge dated January 23, 2008, and are not dischargeable.

2.   11 U.S.C. § 523(a)(1)(B)(i) excepts from discharge any debt for a tax with respect to which a return was required, but was not filed.

3.   [McCoy] failed to file tax returns for the tax years 1993, 1994, 1995, 1996, 1997, and 2000.

4.   The [Prior Complaint] filed in this matter should be dismissed with prejudice as to tax years 1993, 1994, 1995, 1996, 1997, and 2000.

(Prior Adv. Dkt. 29).   The signature of McCoy's counsel appears near the bottom margin of the Agreed Order.   The decretal paragraph of the Agreed Order dismissed with prejudice the Prior Complaint as to tax years 1993 through 1997 and 2000 and noted that only the issue of dischargeability as to the tax years 1998 and 1999 remained in dispute.

As to that remaining issue, McCoy claimed that her dischargeability claim for the tax years 1998 and 1999 did not fall within the discharge exception found in § 523(a)(1)(B)(i) because she

---

[10]   In 2016, section 27-7-41 of the Mississippi Code was amended to add the following last sentence:   "For tax years beginning December 31, 2015, the date for filing a return under this section shall be the same as the date provided for filing the corresponding federal return."   Miss. Code Ann. § 27-7-41 (2017).

filed qualifying returns, albeit late, *before* the MSTC assessed her tax liabilities.   (Prior Adv. Dkt. 37 at 2) (emphasis added).   McCoy submitted numerous exhibits to the Court to support her allegation that the MSTC issued an assessment for tax years 1998 and 1999 *after* receiving her tax returns for those years.   (Prior Adv. Dkt. 36).   Two of those exhibits are the same documents that McCoy attached to the Brief in the Current Adversary.   They consist of an envelope addressed to "Mr. Glen Smith" in Natchez, Mississippi (Prior Adv. Dkt. 36-1; Current Adv. Dkt. 24 at 7) and the Assessment of Individual Income Taxes dated September 17, 2002, in which the MSTC assessed McCoy unpaid income taxes of $150,738.00, including interest and/or damages for the tax years 1998 through 2000 (Prior Adv. Dkt. 36-2 at 3; Current Adv. Dkt. 24 at 8).

### 1.   Prior Adversary Opinion

The Court ruled in the Prior Adversary Opinion, in summary, that McCoy's factual allegations, accepted as true, did not plausibly suggest that the income taxes she owed for the tax years 1998 and 1999 were discharged in her Prior Case pursuant to § 523(a)(1)(B)(i).   *In re McCoy*, 2009 WL 2835258, at *3.   She did not file either one of her "returns"[11] by the 15th day of April following the end of the tax year.   Accordingly, her late-filed returns did not qualify as "returns" for discharge purposes within the definition of a return under § 523(a)(*), and her tax liabilities were excepted from discharge under § 523(a)(1)(B)(i).   Consistent with the Prior Adversary Opinion, the Court entered the Final Judgment on Motion to Dismiss (the "Final Judgment") (Prior Adv. Dkt. 47) on August 31, 2009.

In light of the MDOR's contention that the Final Judgment extinguished the claims in the

---

[11] For purposes of the Prior Motion to Dismiss, the Court accepted as true that the documents filed by McCoy constituted "returns" within the meaning of section 27-7-31(1) of the Mississippi Code.

Current Adversary, a closer examination of the Court's analysis in the Prior Adversary Opinion is necessary.   In the Prior Adversary Opinion, this Court explained that before the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), 119 Stat. 23, Pub. L. 109-8 (Apr. 20, 2005), the Bankruptcy Code did not define the term "return."   *In re McCoy*, 2009 WL 2835258, at *6.   This absence led courts to resort to the four-part test formulated by the Supreme Court in determining for purposes of the statute of limitations whether a document filed with the Internal Revenue Service (the "I.R.S.") qualified as a federal income tax return.   *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 180 (1934); *see also Beard v. Comm'r*, 82 T.C. 766 (1984), *aff'd*, 793 F.2d 139 (6th Cir. 1986); *Green v. Comm'r*, 322 F. App'x 412, 415 (5th Cir. 2009).   Under the fourth prong of that test, courts considered whether a late return exhibited an "honest and reasonable attempt to satisfy the requirements of the tax law."   *Beard*, 82 T.C. at 777.   This definition, when applied to § 523(a)(1)(B)(i), prevented debtors from discharging unpaid tax debt by relying on "bad faith" returns or returns filed after the taxing authority had already issued its tax assessment.   *See In re Payne*, 431 F.3d 1055, 1057 (7th Cir. 2005); *Moroney v. United States (In re Moroney)*, 352 F.3d 902, 906 (4th Cir. 2003); *United States v. Hatton (In re Hatton)*, 220 F.3d 1057, 1060-61 (9th Cir. 2000); *United States v. Hindenlang* (*In re Hindenlang*), 164 F.3d 1029, 1034-35 (6th Cir. 1999).   Courts reasoned that the belated filing of a federal tax return after the government already had assessed the tax debt did not demonstrate an honest attempt to satisfy the tax laws.   *Id.* at 1034.   *But see Colsen v. United States (In re Colsen)*, 446 F.3d 836, 840-41 (8th Cir. 2006) (holding that a court's inquiry was limited to an examination of whether the tax forms themselves—regardless of when filed—were filed in good faith).

In 2005, Congress amended § 523 by adding the following definition of "return":

> For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law *(including applicable filing requirements)*.  Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

11 U.S.C. § 523(a)(*) (emphasis added); *In re McCoy*, 2009 WL 2835258, at *7.   The reference to § 6020(a) and § 6020(b) of the Internal Revenue Code (the "I.R.C.") requires some elaboration.

Section 6020 of the I.R.C. provides the Secretary of the Treasury ("Secretary") with a mechanism for assessing the tax liability of a taxpayer who fails to file a required return.   Under § 6020(a) of the I.R.C., the Secretary may prepare a "substitute" return based on information voluntarily provided by the taxpayer, but the Secretary also may prepare a "substitute" return under § 6020(b) of the I.R.C. based on whatever information he can obtain when there is little or no cooperation from the taxpayer.   Only a substitute return prepared by the Secretary pursuant to § 6020(a) of the I.R.C. is signed by the taxpayer.   The new definition of "return" under § 523(a)(*), therefore, required that a return meet the filing requirements of nonbankruptcy law and disqualified "substitute" returns prepared by the Secretary, unless they were prepared pursuant to procedures under § 6020(a) of the I.R.C. that require cooperation from the taxpayer, including the taxpayer's signature.   *In re McCoy*, 2009 WL 2835258, at *8.

Given this new definition of a "return," the Court found that "the requirements of applicable nonbankruptcy law" included the provision of the Mississippi Income Tax Law, then in effect, that required returns "to be filed on or before April 15 of each year."   MISS. CODE ANN. § 27-7-41 (2013).   Because McCoy filed her tax returns late for the 1998 and 1999 tax years,

Page 11 of 49

which were due on April 17, 2000[12] and April 15, 2001, respectively, the Court ruled that she did not comply with Mississippi's "applicable filing requirements." Therefore, her returns did not qualify for dischargeability under BAPCPA's new definition of that term.

The Court rejected McCoy's argument that her returns, albeit filed late, nevertheless constituted "returns" for purposes of § 523(a)(*) because they were filed *before* the MSTC had rendered its assessments. The Court found that § 523(a)(*) did not differentiate returns filed before an assessment but only those returns filed pursuant to the safe harbor provision in § 6020(a) of the I.R.C. or other similar provision under state law.

### 2.      Prior District Court Opinion

McCoy appealed the Final Judgment to the District Court on September 3, 2009. (Prior Adv. Dkt. 50). The District Court affirmed this Court on February 8, 2011. *In re McCoy*, 2011 WL 8609554, at *3-4.

### 3.      Prior Fifth Circuit Opinion

McCoy appealed the Prior Adversary Opinion to the Fifth Circuit on March 2, 2011. (Prior Adv. Dkt. 62). Affirming this Court, the Fifth Circuit found that McCoy's tax liabilities for the 1998 and 1999 tax periods were non-dischargeable because her returns "did not comply with the filing requirements of applicable Mississippi tax law and were, therefore not 'returns' for discharge purposes." *In re McCoy*, 666 F.3d at 932.

> [W]e adopt the reading of § 523(a)(*) suggested by MSTC and the bankruptcy courts: Unless it is filed under a "safe harbor" provision similar to § 6020(a), a state income tax return that is filed late under the applicable nonbankruptcy state law is not a "return" for bankruptcy discharge purposes under § 523(a). McCoy's

---

[12] Because April 15, 2000 fell on a Saturday, the deadline to file tax returns automatically extended to Monday, April 17, 2000. MISS. CODE ANN. § 27-7-41 (2013).

> 1998 and 1999 returns did not comply with the filing requirements of applicable Mississippi tax law and were, therefore, not "returns" for discharge purposes. Accordingly, McCoy is not entitled to discharge her tax liabilities to Mississippi for the tax years of 1998 and 1999 and has failed to properly state a claim for relief.

*Id.* at 931.

Since the Fifth Circuit rendered its decision in *McCoy*, the First and Tenth Circuit Courts of Appeal have rendered decisions regarding the new definition of "returns" in § 523(a)(*) agreeing with the Fifth Circuit's analysis of § 523(a)(1)(B)(i).  The First Circuit in *Fahey v. Massachusetts Department of Revenue (In re Fahey)*, 779 F.3d 1 (1st Cir. 2015), held that late-filed tax returns, by definition, are ones that fail to satisfy requirements of applicable nonbankruptcy law and, therefore, do not qualify as "returns" for dischargeability purposes. "[W]e do not see how there is any room for reasonable argument that, as a matter of plain language, a [state] law setting the date when a tax return 'is required to be filed' is somehow not a 'filing requirement.'"  *Id.* at 5.

The Tenth Circuit in *Mallo v. Internal Revenue Service (In re Mallo)*, 774 F.3d 1313, 1321 (10th Cir. 2014), similarly found returns filed late under the I.R.C. not to be returns with the meaning of the hanging paragraph.  As explained by the Tenth Circuit, "[t]he phrase 'shall be filed on or before' a particular date is a classic example of something that must be done with respect to filing a tax return and therefore, is an 'applicable filing requirement.'"  *Id.* at 1321.

The Eleventh Circuit Court of Appeals is the only circuit court that has rejected the Fifth Circuit's analysis of § 523(a)(1)(B)(i).  *See Mass. Dep't of Revenue v. Shek (In re Shek)*, No. 18-14922, 2020 WL 372995 (11th Cir. Jan. 23, 2020).   Although recognizing that the plain-language approach of the First, Fifth, and Tenth Circuits "has some force to it," the Eleventh Circuit rejected

the analysis of its sister circuits in favor of an examination of the statutory context of § 523(a)(*).

*Id.*, at *3.

## C.      **Current Case**

On April 19, 2018, McCoy filed a second voluntary chapter 7 petition for relief (the "Petition") (Current Case Dkt. 1) commencing the Current Case.   In Schedule D: Creditors Who Have Claims Secured by Property filed in the Current Case, McCoy listed a "nondischargeable debt" to the MDOR in the amount of $300,000.00 for the tax years 1993 through 2000. (Current Case Dkt. 6 at 13).   On August 8, 2018, the Court granted McCoy a discharge under § 727, subject to the exceptions found in § 523(a).   (Current Case Dkt. 19).

## D.      **Current Adversary**

On April 30, 2019, McCoy initiated the Current Adversary by filing the Complaint to Determine Dischargeability of Debt (the "Current Complaint") (Current Adv. Dkt. 1).   In general, McCoy seeks a declaration that her unpaid state income taxes for the years 1994 through 2000 have been discharged in her Current Case.   (Current Adv. Dkt. 1 at 1).   The declaratory relief she seeks in the Current Complaint differs from the relief she requested in the Prior Complaint only in that the Prior Complaint included her tax obligation for the 1993 tax year, whereas the Current Complaint does not.[13]

The allegations in the Current Complaint are difficult to follow.   McCoy concedes that her Tax Debt was not discharged in her Prior Case "because the tax returns were late."   (Current Adv. Dkt. 1 at 1).   She contests the MDOR's position, however, that "late filed returns are not 'returns'

---

[13] McCoy seeks to add her 1993 tax liabilities to her dischargeability claim in the Current Complaint in the Motion to Amend I, discussed later in this Opinion.   *See infra* at 28.

and can never in a million years be discharged" based on a notice issued by the chief counsel for

the I.R.S. on September 2, 2010 entitled, "Litigating Position Regarding the Dischargeability in

Bankruptcy of Tax Liabilities Reported on Late-Filed Returns and Returns Filed After

Assessment" (the "I.R.S. Notice") (Current Adv. Dkt. 1 at 2-3); I.R.S. Chief Couns. Notice No.

CC-2010-016 (Sept. 2, 2010).   The chief counsel posits in the I.R.S. Notice that regardless of

whether a late-filed Form 1040 qualifies as a "return" for tax purposes, only the portion of the

federal income tax that was assessed before the taxpayer filed Form 1040 is non-dischargeable

under § 523(a).   (Current Adv. Dkt. 1 at 3).   McCoy alleges that the position set forth by the chief

counsel of the I.R.S. in the I.R.S. Notice is similar to the one written by MSTC's legal counsel in

an email dated October 7, 2008, that "in practice, the commission generally accepts delinquent

returns if received prior to an assessment becoming final."   (Current Adv. Dkt. 1 at 3) (emphasis

omitted).

McCoy asserts in the Current Complaint that she made reasonable efforts to file her tax

returns for the years 1996, 1997, 1998, and 1999 prior to an assessment being made.   She contends

that she sent tax returns for those years to the MDOR by certified mail on August 28, 2002, but

they were returned to her by the U.S. Postal Service.   She further contends that she did not receive

the tax returns that were returned to her until sometime after September 17, 2002, which is the day

the MDOR issued its tax assessments.   McCoy supposes that if the MDOR had received the

returned mail prior to the assessment, then it would have accepted them even though they were

filed late under section 27-8-83 of the Mississippi Code.   She contends that courts elsewhere

disagree with the Prior Adversary Opinion, affirmed by the District Court and the Fifth Circuit,

that late-filed tax returns cannot be discharged in bankruptcy, but she does not provide citations to

those cases.

On June 12, 2019, the MDOR filed the Current Motion to Dismiss seeking dismissal of the Current Complaint on the ground that McCoy's claims are barred by the doctrine of res judicata or, in the alternative, that the Current Complaint fails to state a plausible claim for relief.  The MDOR points out that McCoy's dischargeability claims as to her income tax liabilities for the years 1993 through 1997 and 2000 were dismissed with prejudice in the Prior Adversary by the Agreed Order and that her claims for the years 1998 and 1999 were adjudicated in the MDOR's favor.  Citing federal common law, the MDOR contends that res judicata applies when the following four conditions are satisfied  "the parties must be identical; the judgment in the prior action must have been rendered by a court of competent jurisdiction; the prior action must have concluded with a final judgment on the merits; and the same claim or cause of action must be involved in both suits."  (Current Case Dkt. 16 at 3) (citing *United States v. Shanbaum*, 10 F.3d 305, 313 (5th Cir. 1994)).   The MDOR asserts that the Prior Adversary and the Current Adversary satisfy all four (4) conditions.  (*Id.*).  In the alternative, the MDOR maintains that the Current Complaint fails to state a plausible claim for relief in light of the Prior Fifth Circuit Opinion. McCoy opposes the dismissal of the Current Adversary.  She argues that the claims in the Prior Adversary and the Current Adversary are not the same.  She also challenges the fairness of the Prior Fifth Circuit Opinion.

## Discussion

The Court addresses the Current Motion to Dismiss before considering the Motions to Amend, the Motions to Show Cause, and the Motion to Reopen in that order.

A.      **Current Motion to Dismiss**

The MDOR moves to dismiss the Current Complaint under Rule 12(b)(6).   The pleading

standards that apply to a Rule 12(b)(6) motion to dismiss arise out of the requirement in Rule

8(a)(2) of the Federal Rules of Civil Procedure[14]  ("Rule 8(a)(2)") that a complaint contain "a short

and plain statement of the claim showing that the pleader is entitled to relief."   In *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that to survive such a

motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

*Id*. at 570.   In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court described application of

the "plausibility" standard in *Twombly* as a two-part analysis.   First, a court should identify those

allegations in the complaint that, unlike non-conclusory, factual allegations, are not entitled to the

assumption of truth.   *Iqbal*, 556 U.S. at 678-79.   "[R]egardless of whether the plaintiff is

proceeding *pro se* or is represented by counsel, conclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to prevent a motion to dismiss."   *Taylor v.*

*Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quotation marks omitted).   Second, a

court should determine whether the non-conclusory factual allegations in the complaint plausibly

suggest a claim for relief.   *Iqbal*, 556 U.S. at 679.   Factual allegations must be enough to raise a

right to relief above the speculative level, on the assumption that all the allegations in the complaint

are true, even if doubtful in fact.   *Twombly*, 550 U.S. at 555.

Before considering whether the Current Complaint plausibly suggests a claim for relief,

the Court addresses two procedural issues.   First, MDOR moves to dismiss the Current Complaint

---

[14]  Rule 8(a)(2) is made applicable to adversary proceedings by Rule 7008 of the Federal
Rules of Bankruptcy Procedure.

on the ground that McCoy's claims are barred by res judicata, but "res judicata" is not listed among the defenses to a claim for relief that may be asserted in a Rule 12(b) motion. Instead, res judicata is listed among the affirmative defenses in Rule 8(c) that generally must be pled in the answer to a complaint. *Bradford v. Law Firm of Gauthier, Houghtaling & Williams, L.L.P.*, 696 F. App'x 691, 694 (5th Cir. 2017).

The Fifth Circuit, however, has found that "a technical failure to strictly comply with Rule 8(c) does not forfeit the affirmative defense of *res judicata* when it is raised . . . in a manner that does not result in unfair surprise." *Id.* (internal quotation & citation omitted). Thus, a finding of res judicata is appropriate on a motion to dismiss when the res judicata bar is apparent from the face of the pleadings and judicially-noticed facts. *See Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994); *see also Hall v. Hodgkins*, 305 F. App'x 224, 227-28 (5th Cir. 2008) ("If, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper."). Here, the Current Complaint includes McCoy's allegation that the taxes in question "were not discharged [in the Prior Adversary] solely because the tax returns were late." (Current Adv. Dkt. 1 ¶ 7). Because of this reference to the Prior Adversary, the elements of res judicata appear on the face of the Current Complaint. Accordingly, the Court finds that the MDOR's affirmative defense may be considered under Rule 12(b)(6). *See Hall*, 305 F. App'x at 227-28; *see also St. Paul Commodities, LLC v. Crystal Creek Cattle Co.*, No. 3:11-CV-0037-G, 2012 WL 3135574, at *3 n.3 (N.D. Tex. Aug. 1, 2012) (considering the res judicata defense in a Rule 12(b)(6) context because "all relevant facts [were] in the record and [were] uncontroverted").

The second procedural issue arises out of McCoy's attachment of documents to the Brief.

Generally, an analysis of a Rule 12(b)(6) motion is confined to a review of the pleadings.   *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).   When a party presents "matters outside the pleadings," a court may either accept or exclude the evidence, but if the court accepts the evidence, "the motion must be treated as one for summary judgment under Rule 56."   Fed. R. Civ. P. 12(d). In that event, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."   *Id.*   Nevertheless, documents attached as exhibits to a pleading become part of the pleading under Rule 10(c) of the Federal Rules of Civil Procedure[15] if they are referred to in the complaint and are central to a claim.   Because McCoy's exhibits are referred to in the Current Complaint and are central to her dischargeability claim, the Court finds it appropriate to consider them in ruling on the Current Motion to Dismiss.   *See, e.g.*, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Neville v. Am. Republic Ins. Co.*, 912 F.2d 813, 814 n.1 (5th Cir. 1990).   In addition to considering these documents, the Court also will consider "matters of which [it] may take judicial notice."   *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).   Having addressed both procedural matters, the Court turns next to the preclusive effect of the Final Judgment.

The issue raised by the MDOR is whether the Tax Debt excepted from discharge in the Prior Case continues to be excepted in the Current Case.   The preclusive effect of a judgment is determined by two distinct but related doctrines:   (1) res judicata or claim preclusion and (2) collateral estoppel or issue preclusion.   *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004).   The doctrine in question here is res judicata or claim preclusion.

---

[15] Rule 10(c) of the Federal Rules of Civil Procedure is made applicable to adversary proceedings by Rule 7010 of the Federal Rules of Bankruptcy Procedure.

Federal common law determines the res judicata effect of a prior federal court judgment. *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1274 (5th Cir. 1990). Under res judicata, a final judgment in favor of a defendant extinguishes a claim, and a plaintiff may not bring a second suit based upon the same claim, even if the plaintiff asserts additional facts or different legal authority. *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009). By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," res judicata "protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

Res judicata bars re-litigation of a claim if the following four requirements are met: (1) the parties are identical or in privity with the parties in the prior action; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). "If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred." *Id.* The party asserting that res judicata applies has the burden of proving that preclusion is appropriate. *See Memphis-Shelby Cnty. Airport Auth. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 783 F.2d 1283, 1289 (5th Cir. 1986).

The first three elements of res judicata are not in dispute and can be disposed of quickly. First, McCoy and the MDOR, then known as the MSTC, are identical to the parties in the Prior Adversary. Second, McCoy initiated the Prior Adversary in this Court and filed appeals in the District Court and the Fifth Circuit, all of which are courts of competent jurisdiction. Third, the

Page 20 of 49

parties entered into the Agreed Order dismissing with prejudice McCoy's claims with respect to her tax liabilities for the tax years 1993 through 1997 and 2000. *See United States v. Kellogg (In re W. Tex. Mktg. Corp.)*, 12 F.3d 497, 500 (5th Cir. 1994) ("[T]his court has long recognized that a consent judgment is a judgment on merits, and is normally given the finality accorded under the rules of claim preclusion."). This Court then dismissed McCoy's remaining claims with respect to her tax liabilities for the tax years 1998 and 1999 for failure to state a claim. A Rule 12(b)(6) dismissal with prejudice is a final judgment on the merits for res judicata purposes. *Stevens v. Bank of Am., N.A.*, 587 F. App'x 130, 133 (5th Cir. 2014) ("Generally a federal court's dismissal with prejudice is a final judgment on the merits for res judicata purposes. . . . It is well established that Rule 12(b)(6) dismissals are made on the merits."). McCoy exhausted her appeals of the Final Judgment to the District Court and Fifth Circuit, making it a final and preclusive judgment.

The fourth requirement—that the Current Adversary and Prior Adversary involve the same claims—is the only element of res judicata contested by McCoy. Her argument requires the Court to consider whether MDOR has met its burden of proving that the Prior Adversary and the Current Adversary involve the same claim pursuant to the Fifth Circuit's "transactional test." *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 938 (5th Cir. 2000).

Under the transactional test, adopted by the Fifth Circuit from section 234 of the *Restatement (Second) of Judgments*, the preclusive effect of a prior judgment extends to all rights the original plaintiff had with respect to all or any part of the transaction out of which the original action arose. *Petro-Hunt, L.L.C.*, 365 F.3d at 395-96. The critical "inquiry focuses on whether the two cases under consideration are based on 'the same nucleus of operative facts' . . . rather than the type of relief requested, substantive theories advanced, or types of rights asserted."

*United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007).   What factual grouping constitutes a "transaction" or a "series of transactions" requires a pragmatic approach, "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations."   *Test Masters*, 428 F.3d at 571.   By defining a claim in this way, res judicata generally prevents a plaintiff from asserting in a separate action new evidence, grounds, theories, remedies, or forms of relief related to the initial claim.   RESTATEMENT (SECOND) OF JUDGMENTS § 25.

McCoy does not dispute that both the Prior Adversary and the Current Adversary involve the dischargeability of the same unpaid state income tax liabilities for the same tax years.   McCoy nevertheless argues that res judicata does not apply because her claims in the Current Adversary "could not have been made at the time of her discharge."   (Current Adv. Dkt. 23).   Her claim in the Current Adversary is based on the I.R.S. Notice issued on September 2, 2010, stating that a federal income tax return filed late may satisfy the applicable filing requirements for dischargeability if the return was filed before the I.R.S. had assessed the tax liability.

> Read as a whole, section 523(a) does not provide that every tax for which a return was filed late is nondischargeable.   If the parenthetical "(including applicable filing requirements)" in the unnumbered paragraph created the rule that no late-filed return could qualify as a return, the provision in the same paragraph that returns made pursuant to section 6020(b) are not returns for discharge purposes would be entirely superfluous because a 6020(b) return is always prepared after the due date.   . . . . Finally, the supposed "safe harbor" of section 6020(a) is illusory. Taxpayers have no right to demand that the Service prepare a return for them under that provision.

I.R.S. Chief Couns. Notice No. CC-2010-016 (Sept. 2, 2010).   McCoy contends that the I.R.S. Notice can be read as requiring the MDOR to extend the deadline for filing tax returns to any date

before the date an assessment of tax liability is made.   For this proposition, McCoy cites section 27-7-50 of the Mississippi Code, which allows the commissioner of the MDOR, in his discretion, to recognize extensions of time authorized and granted by the I.R.S. for filing state income tax returns.   Because the I.R.S. Notice was not issued until 2010—two years after McCoy had commenced her Prior Case and one year after the issuance of the Prior Adversary Opinion—she insists that she was unable to allege in the Prior Adversary any authority of the I.R.S. "in chang[ing] or directing elements of Mississippi state laws, only state laws were relied on in her prior Bankruptcy case."   (Current Adv. Dkt. 24).

As a preliminary matter, McCoy's argument misconstrues the transactional test.   The focus of the test is whether the causes of action asserted in the second action were part of the claim in the first action, not whether the same legal arguments were raised in support of that claim. Here, the claim in both the Prior Adversary and the Current Adversary is the dischargeability of McCoy's unpaid income taxes for the tax years 1993 through 2000.   Her reliance on the I.R.S. Notice to support that claim does not give rise to a different claim.   *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994).   As explained in comment c to Section 24 of the *Restatement (Second) of Judgments*, "[t]hat a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims.   This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief."   RESTATEMENT (SECOND) OF JUDGMENTS § 24 comment c.   McCoy's tax liabilities for the tax years in question have been litigated and adjudicated by this Court, and the Court's ruling has been affirmed by both the District Court and

Fifth Circuit. *Nilsen v. City of Moss Point*, 701 F.2d 556, 560 (5th Cir. 1983) (holding that "res judicata, by contrast to narrower doctrines of issue preclusion, bars all claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication, . . . not merely those that were adjudicated"); *see also Howe v. Vaughan (In re Howe)*, 913 F.2d 1138, 1144 (5th Cir. 1990).

Moreover, McCoy's argument that she could not have raised the I.R.S. Notice in support of her claims in the Prior Adversary is belied by her actual citation and quotation of the I.R.S. Notice in the Brief for the Appellant, Linda Trennett McCoy, *McCoy v. MSTC (In re McCoy)*, No. 11-60146, 2011 WL 3283806 (5th Cir. Apr. 8, 2011) (the "Appellant Brief"), which she filed in support of her appeal of the Prior District Court Opinion to the Fifth Circuit. The Fifth Circuit described McCoy's reference to the I.R.S. Notice as an attempt "to counter the absence of precedent for her argument." *McCoy*, 666 F.3d at 930. "Even leaving aside that the I.R.S. [N]otice is focused on federal and not state taxes, both of the concerns it raises are misplaced in this case." *In re McCoy*, 666 F.3d at 931. First, the Fifth Circuit disagreed that any rule that a late-filed return could not qualify as a "return" would result in a superfluous reading of the second sentence of § 523(a)(*)—that a return prepared under § 6020(a) of the I.R.C. is included in the definition but a return prepared under § 6020(b) of the I.R.C. is not—since all returns filed under § 6020(b) of the I.R.C. are filed late. The Fifth Circuit viewed the second sentence as simply carving out a narrow exception for returns filed under § 6020(b) of the I.R.C., an interpretation that left no portion of § 523(a)(*) superfluous. Second, the Fifth Circuit disagreed that its reading of § 523(a)(*) would represent a "major change" from pre-BAPCPA policies. The test used by courts pre-BAPCPA focused on the taxpayer's good faith, which the Fifth Circuit found to be

consistent with excluding late-filed returns from the definition of a "return" for bankruptcy discharge purposes. *Id.* at 931-32.

The Court finds that both the Prior Adversary and the Current Adversary involve McCoy's attempt to discharge the same unpaid state income tax liabilities for the same tax years and McCoy's arguments do not preclude the application of res judicata. The Court's inquiry, however, does not end here because § 523(b) carves out exceptions to the doctrine of res judicata as to certain dischargeability determinations, including those rendered under § 523(a)(1). Neither party mentioned § 523(b) in their motions, responses, or briefs. At the Hearing, counsel for the MDOR argued that § 523(b) did not apply.

Section 523(b) provides that a determination that a debt is excepted from discharge in the first bankruptcy case is res judicata in the second bankruptcy case unless the debt was excepted from discharge in the second bankruptcy case under one of eight (8) exceptions.

> Notwithstanding subsection (a) of this section, a debt that was excepted from discharge under subsection (a)(1), (a)(3), or (a)(8) of this section, under section 17a(1), 17a(3), or 17a(5) of the Bankruptcy Act, under section 439A of the Higher Education Act of 1965, or under section 733(g) of the Public Health Service Act in a prior case concerning the debtor under this title, or under the Bankruptcy Act, is dischargeable in a case under this title unless, by the terms of subsection (a) of this section, such debt is not dischargeable in the case under this title.

11 U.S.C. § 523(b). Accordingly, a debt excepted from discharge under § 523(a)(1) in the first bankruptcy case requires proof of dischargeability in the second bankruptcy case. The converse of the plain language of § 523(b) also is true. *PACJETS Fin. Ltd. v. Blackmore (In re Blackmore)*, No. 05-11673, 2006 WL 4525945, at *2 (Bankr. S.D. Tex. Dec. 4, 2006). Once a debt is "excepted from discharge" on a basis other than one of the eight (8) enumerated grounds set forth in § 523(b), that debt is forever barred from discharge. "In other words, once nondischargeable,

Page 25 of 49

always nondischargeable." *Paine v. Griffin (In re Paine)*, 283 B.R. 33, 37 (B.A.P. 9th Cir. 2002). To understand why § 523(b) renders res judicata inapplicable to certain previously excepted tax debts requires an understanding of the role that the passage of time plays in shifting the status of certain tax debts from priority to nonpriority.

The priority and discharge of income tax claims is governed by § 507(a)(8) and § 523(a)(1)(A). Section 507(a)(8)(A) grants priority status to claims for income taxes "for a taxable year ending on or before the date of the filing of the petition . . . for which a return if required, is last due, including extensions, after three years before the date of the filing of the petition" and those "assessed within 240 days before the date of the filing of the petition, exclusive of . . . any time during which an offer in compromise with respect to that tax was pending or in effect during that 240-day period, plus 30 days; and . . . any time during which a stay of proceedings against collections was in effect in a prior case under this title during that 240-day period, plus 90 days." 11 U.S.C. § 507(a)(8)(A)(i)-(ii). In summary, § 507(a)(8)(A) accords priority status to unpaid income taxes if the liabilities are: (1) less than three years old; (2) assessed within 240 days before the commencement of the bankruptcy case; or (3) still assessable at the time the bankruptcy petition is filed. As a corollary, § 523(a)(1)(A) excepts from discharge tax debts treated under § 507(a)(8) as priority claims. So the determination whether certain tax obligations are non-dischargeable under § 523(a)(1)(A) sometimes requires a determination whether a limitations period has expired before the bankruptcy filing. For that reason, § 523(b) renders principles of res judicata inapplicable to § 523(a)(1)'s exception to discharge. A leading treatise

on bankruptcy law demonstrates why this is so:

> If the applicable time limitation periods had not expired prior to the filing of an
> initial bankruptcy case, by the time a subsequent chapter 7 case has been filed, the
> time limitations periods may have expired.

4 COLLIER ON BANKRUPTCY ¶ 523.28 (16th ed. 2019); *see Hatmaker v. Klasinski (In re Klasinski)*,

215 B.R. 181, 183 (Bankr. C.D. Ill. 1997) (noting that § 523(b) permits the discharge of certain

debts that were not discharged in a prior proceeding but would have been discharged had the case

been filed at a later date); *Saler v. Saler (In re Saler)*, 205 B.R. 737, 749 (Bankr. E.D. Pa. 1997)

(stating that the purpose of § 523(b) is to make dischargeable those debts not discharged in a prior

case that would have been discharged if the case had been filed later); *Royal Am. Oil & Gas Co.*

*v. Szafranski (In re Szafranski)*, 147 B.R. 976, 988 (Bankr. N.D. Okla. 1992) (recognizing that

§ 523(b) allows for updating and reconsidering tax debt in a later case when exception to discharge

of the debt in the earlier case did not result from debtor dishonesty).   Thus, for discharge

determinations that hinge on the expiration of a time limitations period, § 523(b) renders res

judicata inapplicable to § 523(a)(1).

In the Prior Adversary, the MDOR did not rely on § 523(a)(1)(A) to support its argument

that the Tax Debt was excepted from discharge.   The Court nevertheless pointed out in the Prior

Adversary Opinion that the Tax Debt was not entitled to priority status under § 507(a)(8) and,

therefore, not excepted from discharge by § 523(a)(1)(A).   *McCoy*, 2009 WL 2835258, at *6.

Instead of relying on § 523(a)(1)(A) and § 507(a)(8), the MDOR maintained, this Court found,

and both the District Court and the Fifth Circuit agreed, that McCoy's late-filed "returns" were not

returns within the meaning of § 523(a)(1)(B)(i) because timely filing is part of the "applicable

filing requirements" discussed in § 523(a)(*).   Some commentators refer to this interpretation of

Page 27 of 49

§ 523(a)(1)(B)(i) as the "one-day-late" rule.   *See* Ryan G. Saharovich, *To Discharge or Not to Discharge: Tax is the Question*, 33 EMORY BANKR. DEV. J. 219, 221 (2016).   McCoy recognizes the practical result of the "one-day-late" rule in the Current Complaint when she restates the MDOR's position as "late filed returns are not 'returns' and can never in a million years be discharged" under § 523(a)(1)(B)(i).   (Current Adv. Dkt. 1).

The passage of time between the dates the tax liabilities were assessed and/or the returns were due and the date of McCoy's filing of the Prior Case played no role in the Prior Fifth Circuit Opinion. Likewise, the passage of time between McCoy's filing of the Prior Case in 2007 and the Current Case in 2018 has no impact on the same dischargeability issue in the Current Adversary. Her late-filed "returns" remain late even after ten (10) years.   Yet the passage of time is the only fact that has changed since the initiation of the Prior Adversary.   For this reason, the Court agrees with the MDOR that the Current Complaint fails to state a plausible claim for relief in light of the "one-day-late" filing rule and should be dismissed.

## B.    Motions to Amend

In the Current Complaint, McCoy asks the Court to discharge her unpaid state income tax liabilities for the tax years 1994 through 2000.   In the Motions to Amend, McCoy asks the Court for permission to amend the Current Complaint to include as part of her dischargeability claim her unpaid state income tax liabilities for the tax years 1993, 2009, and 2010.   In addition, McCoy seeks permission to amend the Current Complaint to include the accrued interest on her unpaid tax liabilities for the years 1993 through 2000.   The MDOR opposes the Motions to Amend on grounds they are procedurally defective and the amendments would be futile.

McCoy's dischargeability claim regarding her unpaid state income tax liabilities for the

1993 tax year and, for the reasons discussed below, her dischargeability claim for the accrued interest on her unpaid state income tax liabilities for the tax years 1994 through 2000 were included in her Prior Complaint and were adjudicated in favor of the MDOR in the Prior Adversary Opinion, the Prior District Court Opinion, and the Prior Fifth Circuit Opinion.   Her dischargeability claims regarding her unpaid state income tax liabilities for the 2009 and 2010 tax years, however, are new and require further discussion.

McCoy filed her tax returns for the 2009 and 2010 tax years and remitted payment of the reported taxes in a timely manner.   (Current Dkt. 92).   In her tax returns, she reported total income of $97,257.00 for 2009 and $72,403.00 for 2010.   On March 27, 2019, the MDOR issued an Audit Assessment for unpaid tax liabilities for the years 2009 and 2010 in the total amount of $27,923.00.   The MDOR issued the Audit Assessment after receiving information that the I.R.S. had increased McCoy's taxable income by $167,048.00 in 2009 and by $150,897.00 in 2010 and had imposed a civil fraud penalty.   (Current Adv. Dkt. 92); MISS. CODE ANN. § 27-7-51(1). According to the MDOR, the I.R.S. audit work papers showed that the I.R.S. imposed the civil fraud penalty after determining that the primary source of the unreported income was embezzled funds and that McCoy had used most of the unreported income to gamble.   (Current Adv. Dkt. 92).   The amount of unreported income compared to the amount of reported income in her 2009 and 2010 tax returns increased her state income tax liabilities for those tax years by $27,923.00. McCoy has denied that she has been criminally charged with embezzlement or tax evasion but has not denied the underlying allegations.   (Current Adv. Dkt. 112).

Rule 15 of the Federal Rules of Civil Procedure ("Rule 15")[16] permits amendments to pleadings as a matter of course in certain instances and otherwise allows amendments "only with the opposing party's written consent or the court's leave" on the condition that amendments should be "freely give[n] when justice so requires."  FED. R. CIV. P. 15.   In the Amended Response to Motion to Amend I and the Response to Motion to Amend II filed on January 10, 2020, the MDOR opposes the Motions to Amend, in part, because McCoy did not attach a copy of a proposed amended complaint to the Motions to Amend as required by Local Rule 7015-1.   (Current Adv. Dkt. 118 at 2 & 119 at 2).   As of December 1, 2019, the Uniform Local Rules of the U.S. Bankruptcy Courts for the Northern and Southern Districts of Mississippi were amended to include new Local Rule 7015-1, which requires, in pertinent part, that any "proposed amended or supplemental pleading must be an exhibit to a motion for leave to file the pleading."  MISS. BANKR. L.R. 7015- 1.   Because McCoy filed the Motions to Amend in July and August of 2019, before the effective date of Local Rule 7015-1, the Court rejects the MDOR's argument that the Motions to Amend should be denied as procedurally defective.   (Current Adv. Dkt. 25, 48).

Before the Court had an opportunity to rule on the Motions to Amend and without the MDOR's consent, McCoy filed the Proposed Amended Complaint on January 9, 2020.   (Current Adv. Dkt. 117).   When leave to amend is required, an amended pleading filed without the Court's permission or the opposing party's consent generally is without legal effect.   *United States ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293 (5th Cir. 2003).   Accordingly, the Court notified the parties prior to the Hearing in the Order Regarding Filing of Amended Complaint to Determine

---

[16] Rule 15 of the Federal Rules of Civil Procedure is made applicable to adversary proceedings by Rule 7015 of the Federal Rules of Bankruptcy Procedure.

Dischargeability of Debt (Current Adv. Dkt. 123) that it intended to treat the Proposed Amended Complaint as an exhibit attached to the Motions to Amend.   This treatment of the Proposed Amended Complaint cured any procedural defect and allayed the MDOR's concern about an amended complaint departing from McCoy's description in the Motions to Amend and "possibly requiring another series of motions and hearings to resolve."   (Current Adv. Dkt. 119 at 3).

As an additional ground for opposing the Motions to Amend, the MDOR argues that the amendments would be futile.   Indeed, the Fifth Circuit has noted that "leave to amend is by no means automatic."   *Ashe v. Corley*, 992 F.2d 540, 542 (5th Cir. 1993).   Courts consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment" when deciding whether to grant leave to amend.   *Southmark Corp. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 315 (5th Cir. 1996).   A court may deny leave to amend a complaint based on the futility of the amendment.   *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999).   "Futility" means that the new complaint would fail to state a claim upon which relief could be granted using the same standard of legal sufficiency as set forth in Rule 12(b)(6).   *J.R. Stripling v. Jordan Prod. Co.*, 234 F.3d 863 (5th Cir. 2000).   Amendment is futile if the new complaint "could not survive a motion to dismiss."   *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010). Thus, the previous analysis of the Current Complaint under Rule 12(b)(6) is the same analysis for determining whether granting leave to file the Proposed Amended Complaint would be futile.   In short, the Court's disposition of the Motions to Amend hinges on whether the Proposed Amended Complaint states a plausible claim for relief.

In the Proposed Amended Complaint, McCoy seeks to assert the following claims: (1) that res judicata does not apply to the tax years from 1993 through 2000; (2) that the MDOR should have decreased McCoy's state income tax liabilities for the 2000 tax year to account for her three dependents and $3,315.00 in mortgage interest; (3) that the MDOR should have decreased her state income tax liabilities by $417,279.00 for the 1998 tax year and $708,480.00 for the 1999 tax year to account for contract wages; (4) that the ten-year statute of limitations has expired for the I.R.S.'s collection of McCoy's federal income tax liabilities for the tax years 1993 through 2000 and, therefore, her state income tax liabilities for these same tax years should be discharged. (Current Adv. Dkt. 117). Notwithstanding this list of claims, the Proposed Amended Complaint consists mostly of McCoy's argument in opposition to the Motion to Dismiss and a recitation of her general dissatisfaction with the MDOR and Mississippi's income tax law. The Court also notes that the allegations in the Proposed Amended Complaint do not mirror McCoy's descriptions in the Motions to Amend. For example, the Proposed Amended Complaint does not mention McCoy's unpaid state income tax liabilities for the 2009 and 2010 tax years or the accrued interest on her unpaid tax liabilities for the tax years 1993 through 2000, both of which appear in the Motion to Amend II. Although these additional claims are not included in the Proposed Amended Complaint, the Court also will consider whether they state a plausible claim for relief.

The Court finds that the Proposed Amended Complaint does not resolve the deficiencies in the Current Complaint. The Court has found that res judicata applies to McCoy's dischargeability claims; McCoy's arguments to the contrary in the Proposed Amended Complaint have been considered and rejected by the Court. Amending the Current Complaint to add the 1993 tax year would not give rise to a plausible claim for relief since that tax year was included in

the Prior Complaint and likewise would be subject to the defense of res judicata.   Moreover, her attempt to assert a separate dischargeability claim for the accrued interest on her unpaid tax liabilities for the years 1993 through 2000 would fail for the same reason.   *Hardee v. I.R.S. (In re Hardee)*, 137 F.3d 337, 342 (5th Cir. 1998) (holding that accrued interest is part of the underlying tax liability and is treated like a tax for dischargeability purposes).   As to McCoy's claims challenging the accuracy of the assessments for the tax years 1993 through 2000, the Court finds that once McCoy initiated the Prior Adversary, the principles of res judicata required that she assert every right and remedy arising out of the same transaction or series of transactions.   *Petro-Hunt, L.L.C.*, 365 F.3d at 395-96.   She chose not to contest the accuracy of the amounts assessed for the tax years 1993 through 2000 in the Prior Adversary, and res judicata would prevent her from doing so now.

The only remaining potential claims are the dischargeability of her unpaid state income tax liabilities for the 2009 and 2010 years.   As previously noted, McCoy did not refer to the 2009 and 2010 tax liabilities in the Proposed Amended Complaint but mentions the claims in the Motion to Amend II.   McCoy argues in the Motion to Amend II that the MDOR assessed the tax liabilities on March 27, 2019, which she assets is more than 300 days after the commencement of the Current Case on April 19, 2018.   In a separate filing regarding a discovery dispute, McCoy maintained that the tax liabilities for the 2009 and 2010 tax years are dischargeable under § 523(a)(1)(A) pursuant to the "240-day rule."   (Current Adv. Dkt. 112).   Section 507(a)(8)(A)(ii) gives eighth priority to those income taxes "assessed within 240 days *before* the date of the filing of the petition."   11  U.S.C.  § 507(a)(8)(A)(ii)  (emphasis  added).   McCoy  thus  misreads § 507(a)(8)(A)(ii) as discharging all tax liabilities assessed *after* the petition date.

It appears that McCoy may have confused the dischargeability of a liability disclosed by a tax return with a liability based on an assessment. Although the liabilities are for the same tax year, a liability based on an assessment may be non-dischargeable under § 507(a)(8)(A)(iii), which grants priority to those income taxes "not assessed before, but assessable, under applicable law or by agreement, after the commencement of the case." 11 U.S.C. § 507(a)(8)(A)(iii); *see La. Dep't of Revenue & Taxation v. Lewis (In re Lewis)*, 199 F.3d 249, 252 (5th Cir. 2000) (holding that the meaning of an "assessment" for purposes of § 507(a)(8)(A)(ii) is a mixed question of federal and state law).

In Mississippi, an assessment of income tax generally must be made within three (3) years from the due date of the tax return or the date the tax return was filed, whichever is later. MISS. CODE ANN. § 27-7-49(1). There is an exception to the general three (3)-year limitations period, however, "where the reported taxable income of a taxpayer has been increased or decreased by the [I.R.S.]." MISS. CODE ANN. § 27-7-49(4). In that event, the MDOR may make an assessment within three (3) years "from the date the [I.R.S.] disposes of the tax liability in question." *Id.* The MDOR issued the assessment for the 2009 and 2010 tax years on March 27, 2019 pursuant to this provision of Mississippi's income tax law after it received information from the I.R.S. regarding McCoy's 2009 unreported income on July 12, 2016 and her 2010 unreported income on January 5, 2017. (Current Adv. Dkt. 92). Accordingly, McCoy's dischargeability claims for the 2009 and 2010 tax years, to the extent she asserts such claims, fail to state a claim for relief because income taxes "assessable under applicable law . . . *after* the commencement of the case" are non-dischargeable. 11 U.S.C. § 507(a)(8)(A)(iii) (emphasis added).

In summary, because McCoy's claims alleged in the Proposed Amended Complaint and in

the Motions to Amend fail to state a plausible claim, granting leave to file the Proposed Amended Complaint or an amended complaint containing the additional allegations in the Motion to Amend II would be futile.   Therefore, the Court finds that the Motions to Amend should be denied with prejudice.   *See United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) (listing futility of amendment as justification for denial of leave to amend).

**C.     Motions to Show Cause**

In the interest of efficiency, the Court interprets the Motions to Show Cause as motions to hold MDOR in contempt for its alleged violations of the discharge injunction in the Prior Case and/or the Current Case and its alleged violations of the automatic stay in the Current Case.   The MDOR challenges the procedural posture of the Motions to Show Cause, an issue that merits a preliminary discussion.

The Federal Rules of Bankruptcy Procedure create two paths for the resolution of disputes: (1) adversary proceedings under Rule 7001 of the Federal Rules of Bankruptcy Procedure; and (2) contested matters under Rule 9014 of the Federal Rules of Bankruptcy Procedure ("Rule 9014"). *Field v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 762 n.49 (5th Cir. 1995); *Section 1120(a)(1) Comm. of Unsecured Creditors v. Interfirst Bank Dallas, N.A. (In re Wood & Locker, Inc.)*, 868 F.2d 139, 142 (5th Cir. 1989).   A proceeding to cite a creditor for contempt for willful violation of an injunction is a contested matter pursuant to Rule 9020 of the Federal Rules of Bankruptcy Procedure governed by Rule 9014.   But McCoy filed the Motions to Show Cause in the Current Adversary, thereby initiating contested matters in a pending adversary proceeding.   Procedurally,

McCoy should have filed the Motions to Show Cause as contested matters in the Current Case[17] and asked the Court to consolidate the contested matters with the claims asserted in the Current Adversary.   *See* FED. R. BANKR. P. 7042, 9014(c).

The Supreme Court has instructed courts to afford some leniency regarding pleadings filed by *pro se* litigants.   *McNeil v. United States*, 508 U.S. 106, 113 (1993) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).   The Court must strike a balance between two competing interests when *pro se* litigants are involved:   the uniform application of the procedural rules and equal access to the courts.   *Id.*   On balance, the Court finds it unnecessary to require McCoy, a *pro se* litigant, to jump through the procedural hoop of refiling the Motions to Show Cause in the Current Case just to have the contested matters consolidated with the Current Adversary.   Consistent with the Supreme Court's instructions, the Court addresses the merits of the Motions to Show Cause in their present posture.

### 1.   Motion to Show Cause I

In the Motion to Show Cause I, McCoy asks the Court to impose sanctions against the MDOR for violating:   (1) the discharge injunction by attempting to collect penalties assessed for the tax years 1993 through 2000 that she claims were discharged in the Prior Case in 2008 (the "Discharge Injunction Violation Claim") and (2) the automatic stay under § 362 in the Current Case by withholding garnished funds (the "Stay Violation Claim").

---

[17] Usually, actions for violations of discharge injunctions are filed in the bankruptcy case where the injunction was issued because contempt proceedings traditionally are decided by the court whose order is to be enforced.   Because the discharge injunction in question was issued by this Court, although in the Prior Case, the Court properly may consider McCoy's civil contempt action in the Current Adversary.

### a.    Discharge Injunction Violation Claim

McCoy alleges that from 2008 through 2018, the MDOR attempted to collect penalties on the tax liabilities in question in violation of the discharge injunction.   According to McCoy she "has received statements with added penalties without authority of law for approximately 7 years causing her great anguish."   (Current Adv. Dkt. 26 at 1).   By citing § 523(a)(7) for the proposition that "[p]enalties must only meet the three-year rule and are treated as unsecured debts in bankruptcy," McCoy suggests that the tax penalties related to the taxes excepted from discharge under § 523(a)(1)(B)(i) were discharged in the Prior Case.   (*Id.*).   Under § 523(a)(7), a tax penalty is dischargeable:   (1) if the penalty was imposed upon a tax that was dischargeable or (2) if the penalty was "imposed with respect to a transaction or event that occurred [more than] three years before the date of the filing of the petition."   11 U.S.C. § 523(a)(7).   McCoy rests her argument on the three-year limitations period set forth in the second prong of § 523(a)(7)(2).

In support of her allegations that MDOR engaged in collection activities that violated the discharge injunction, McCoy attached the following documents to the Motion to Show Cause I: (1) a Statement of Account dated January 22, 2013, from the MDOR indicating a balance then due of $283,697.24 for the tax years 1993 through 1997, and 2000, consisting of $84,689.63 in unpaid taxes, $152,010.04 in interest, and $46,997.57 in penalties (Current Adv. Dkt. 26 at 4 & 7); and (2) a letter dated September 20, 2018, from the MDOR confirming the balance then due of $334,242.27, for the tax years 1993 through 1997, 2000, and 2015, consisting of $83,479.76 in unpaid taxes, $203,481.10 in interest, and $47,281.41 in penalties (Current Adv. Dkt. 26 at 5-6). The MDOR contends that McCoy's discharge claim under § 523(a)(7) is barred by res judicata for the same reasons her § 523(a)(1) claim is barred.

Section 524 of the Bankruptcy Code imposes a permanent injunction against the collection of debts discharged in bankruptcy.  Specifically, a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [debt discharged under § 727] as a personal liability of the debtor."  11 U.S.C. § 524(a)(2).  Section 105(a) grants bankruptcy courts the statutory authority to enforce the discharge injunction.  Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Bankruptcy courts also have inherent civil contempt authority.  *Knight v. Luedtke (In re Yorkshire, LLC)*, 540 F.3d 328, 332 (5th Cir. 2008) ("It is well-settled that a federal court, acting under its inherent authority, may impose sanctions against litigants or lawyers[.]"); *Ins. Co. of N.A. v. NGC Settlement Tr. & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1063 (5th Cir. 2009) (noting that the "discharge injunction granted by section 524(a) is a substantive right conferred by the Bankruptcy Code, often enforced by a motion for contempt").

Recently, the Supreme Court held that a creditor may be held in civil contempt for violating a discharge injunction if there is no fair ground of doubt as to whether the discharge order barred the creditor's conduct.  *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1797 (2019).  The Supreme Court held that §§105 and 524 "authorize a court to impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order."  *Taggart*, 139 S. Ct. at 1801.  This is an objective test.  *Id.* at 1804.

The MDOR does not dispute that after McCoy received her discharge in the Prior Case and before she commenced the Current Case, the MDOR attempted to collect the assessed tax penalties.  The MDOR argues, however, that its actions did not violate the discharge injunction

because the Final Judgment in the Prior Adversary extinguished her dischargeability claim under § 523(a)(7) or, in the alternative, because § 523(a)(7) does not discharge the tax penalties in question.   (Current Adv. Dkt. 39, 120).   If MDOR is correct, or if MDOR's arguments constitute an objectively reasonable basis for concluding that the tax penalties were not discharged, then no violation of the discharge injunction occurred.   *Taggart*, 139 S. Ct. at 1801; *see Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 53 (5th Cir. 1993) (discharge injunction "protects a debtor from any subsequent action by a creditor whose claim has been discharged").   The Court considers the res judicata argument first.

The Tax Debt previously was determined to be non-dischargeable in the Prior Adversary under § 523(a)(1).   No judgment was rendered in the Prior Adversary holding that the tax penalties were discharged by the three (3)-year limitations period under § 523(a)(7)(B).   For reasons unknown to the Court, McCoy did not raise § 523(a)(7)(B) as an alternative ground for discharging her tax penalties in the Prior Adversary.   At the Hearing, McCoy stated that because the MDOR's assessment of tax penalties is discretionary under Mississippi law, she did not know whether the MDOR would attempt to collect them when she initiated the Prior Adversary.   The MDOR disputed McCoy's alleged lack of knowledge with a series of emails and letters exchanged between McCoy and the MDOR before the commencement of the Prior Adversary where the MDOR clearly informed McCoy of its position that the tax penalties assessed for the tax years 1993 through 2000 were not discharged in the Prior Case.   (DOR Ex. 2 at 1-2, 5, 8, 13-15).   Given this correspondence, it appears to the Court that McCoy adopted an all-or-nothing approach in the Prior Adversary to the dischargeability of her Tax Debt under § 523(a)(1).   If she had prevailed in the Prior Adversary, the discharge of her unpaid income taxes would have resulted in the

Page 39 of 49

discharge of the penalties associated with those underlying taxes under § 523(a)(7)(A).   Here, the tax penalties did not meet the requirements for discharge under § 523(a)(7)(A) in the Prior Adversary because the underlying taxes fell within the exception under § 523(a)(1)(B)(i).   But once McCoy initiated the Prior Adversary, the principles of res judicata required that she assert every statutory basis in the Prior Complaint for the discharge of her Tax Debt, including § 523(a)(7)(B), which she did not do.   As discussed previously, res judicata applies to whole claims, that is, all rights to remedies arising out of the same transaction or series of transactions— whether litigated or not.   *Nilsen*, 701 F.2d at 560.   Accordingly, because the tax penalties in question were not discharged in the Prior Case, the Court finds that there was no violation of the discharge injunction and McCoy's request for sanctions should be denied.   Having reached this finding, it is unnecessary for the Court to determine whether the MDOR's adoption of the minority view's reading of § 523(a)(7) provides an "objectively reasonable basis" for concluding that the tax penalties were not discharged.   *See, e.g., Cassidy v. Comm'r*, 814 F.2d 477 (7th Cir. 1987) (holding that tax penalties unrelated to a dischargeable tax are not dischargeable under § 523(a)(7)(B) even if they accrued more than three (3) years before the date of the petition).

### b.    Stay Violation Claim

McCoy contends that the MDOR violated the automatic stay by accepting and cashing a check issued by her employer, the U.S. Department of Defense (the "DOD"), in response to a garnishment served by the MDOR before she filed the Current Case.   In support of her Stay Violation Claim, McCoy attached two emails she received this summer from counsel for the MDOR discussing its release of the garnishment, its return of a garnishment check, and its repayment of a second garnishment check.   (Current Adv. Dkt. 26 at 8 & 47 at 13-15).   In the

first email, dated May 8, 2019, counsel for the MDOR informed McCoy that he returned a "garnishment payment check" to the DOD received that same day.   (Current Adv. Dkt. 47 at 13-14).   He attached to the email a copy of the check and the letter he wrote to the DOD advising it of McCoy's Current Case.   (Current Adv. Dkt. 47 at 14).   The second email, dated June 26, 2019, apparently was sent by counsel for the MDOR in response to McCoy's email asking about the status of a second "garnishment payment check."   (Current Adv. Dkt. 26 at 8).   Counsel for the MDOR informed McCoy that on May 6, 2019, the MDOR sent a release of the garnishment (or levy) to the DOD's office in Cleveland, Ohio by two separate faxes.   (Current Adv. Dkt. 26 at 8 & 47 at 13).   On May 8, 2019, the MDOR intercepted from its accounting office the first "garnishment payment check" issued by the DOD on May 3, 2019 and returned it to the DOD that same day.   The MDOR did not take any further action to procure the release of the garnishment. The DOD then mailed a second "garnishment payment check" to the MDOR, which the MDOR did not intercept before it was negotiated.   The MDOR issued McCoy a check in repayment of the garnishment either that same day or the next.

The stay enjoins creditors from attempting to recover a prepetition claim against the debtor and springs into being immediately upon the filing of a voluntary bankruptcy petition.   *Chapman v. Bituminous Ins. Co. (In re Coho Res., Inc.)*, 345 F.3d 338, 343-44 (5th Cir. 2003) (citations & quotations omitted).   The purpose behind the automatic stay is to allow a debtor "breathing room" and a chance for a fresh start.   *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 301 (5th Cir. 2005).   A stay of an action against a debtor continues only until the earliest of the time the case is closed, the time the case is dismissed, or the time a discharge is granted or denied.   11 U.S.C. § 362(c)(2).

Should the automatic stay be violated, Congress has provided a debtor with a private right of action for any "willful" violation.   "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages . . . and, in appropriate circumstances, may recover punitive damages."   11 U.S.C. § 362(k)(1).   The Fifth Circuit has set forth a three-part test for establishing an actionable violation of the stay under § 362(k):   (1) the entity must have known of the existence of the stay; (2) the entity's acts must have been intentional; and (3) the entity's acts must have violated the automatic stay.   *Young v. Repine (In re Repine)*, 536 F.3d 512, 519 (5th Cir. 2008).

As the MDOR points out, however, the automatic stay under § 362(a) in the Current Case terminated on August 8, 2018 when the Court entered the discharge order.   (Current Case Dkt. 19; Current Adv. Dkt. 39 at 5).   For that reason, MDOR's actions in May and June of 2019 after entry of the discharge could not have violated the automatic stay and the Court's analysis need not proceed any further.   Assuming, however, that the automatic stay was in place, the Court finds that MDOR took all necessary action to release its garnishment even though its efforts did not stop the garnishment immediately.   *See In re Briskey*, 258 B.R. 473, 477 (Bankr. M.D. Ala. 2001); *see also Buchanan v. First Family Fin. Servs. (In re Buchanan)*, 273 B.R. 749, 751 (Bankr. M.D. Ga. 2002) (holding that creditor's "careful and deliberate steps" in repeatedly instructing garnishee to cease making deduction was good faith effort that satisfied creditor's obligation to comply with § 362(a)).   The MDOR sent two separate faxes to the DOD releasing the garnishment within days of the filing of the Current Case and returned the first "garnishment payment check" to the DOD immediately, once again informing the DOD of the Current Case.   Apparently, the actions taken by the MDOR were insufficient to prevent the DOD from mailing a second "garnishment payment

Page 42  of 49

check."   But the DOD's actions at this juncture were beyond the MDOR's control.   The MDOR acted reasonably in believing that the DOD had received and acted upon its instructions to release the garnishment.   Having found that the automatic stay was not in effect when the conduct in question occurred and further having found that no violation of the automatic stay would have occurred even if the stay were in effect, McCoy's request for sanctions should be denied.

### 2.    Motion to Show Cause II

In the Motion to Show Cause II, McCoy asks the Court to impose sanctions against the MDOR because:   (1) the MDOR included an incorrect tax amount for 2015 in a proposed Agreed Final Judgment (the "Proposed Agreed Judgment") (Current Adv. Dkt. 69-2) attached by the MDOR as an exhibit to its Request for Status Conference (the "Request for Status Conference") (Current Adv. Dkt. 69) and (2) the MDOR unlawfully attempted to collected monies from McCoy when it mailed her a letter dated October 28, 2019 with the subject line, "Notice of Default on Settlement Agreement" (the "Default Letter") (Current Adv. Dkt. 84 at 5).   Both of the actions challenged by McCoy stem from the parties' announcement of a settlement of the Current Adversary at a hearing on August 28, 2019.

A hearing had been set that day on the Motion to Dismiss and other contested matters. Counsel for the MDOR recited on the record the terms of the parties' settlement and also provided the Court with a document entitled, "Settlement Terms."   (Current Adv. Dkt. 93-5 at 2-3).   The settlement would resolve all of McCoy's then known tax liabilities upon payment of $77,089.73 in sixty (60) equal monthly installments beginning October 25, 2019.   Upon default, the MDOR would mail a written notice of default to McCoy, and if she failed to cure the default within thirty (30) business days, the MDOR could enforce the entire amount of McCoy's unpaid tax liabilities

and proceed with its state law remedies for the collection of the amount due.

In response to a question by counsel for the MDOR about how best to formalize the parties' settlement, the Court stated, "you're going to present an agreed final judgment that disposes of everything."   (Current Adv. Dkt. 93-6 at 10).   To that end, on September 27, 2019, counsel for the MDOR sent McCoy the Proposed Agreed Judgment for her review and approval and obtained a brief extension of time to submit the final draft to the Court.   (Current Adv. Dkt. 69).   McCoy then notified counsel for the MDOR by email "that she could not agree to the settlement and that she was neither physically nor mentally able to fulfill the contract."   (Current Adv. Dkt. 69 at 1). The MDOR filed the Request for Status Conference on October 8, 2019, asking the Court to set a date and time for a status conference on the Current Adversary.

On October 28, 2019, the MDOR sent McCoy the Default Letter informing her that her "Settlement Agreement" was in default because she failed to pay her monthly installment payment of $1,284.83 by October 25, 2019.   The MDOR also informed her that if she failed to cure the default within thirty (30) days, it would proceed with state law remedies to collect the entire amount owed for the tax years 1993 through 2000 and 2015.

On November 7, 2019, the Court entered an order setting the status conference for December 10, 2019, informing the parties that the purpose of the status conference would be limited to determining the procedure for resolving the substantive merits of the parties' dispute. (Current Adv. Dkt. 79).   Also on November 7, 2019, McCoy filed the Request to Set Aside Proposed Agreed Judgement Submitted by the Mississippi Department of Revenue (the "Motion to Set Aside") (Current Adv. Dkt. 80).   McCoy maintained that "a settlement is different from a judgement" and disagreed with the MDOR's transformation of the "Settlement Term" document

into the Proposed Agreed Judgment.   (Current Adv. Dkt. 80 at 2).   She also stated, "It would be an impossibility . . . to pay $1300/month for 60 months."   (Current Adv. Dkt. 80 at 11).   The Court denied the Motion to Set Aside as premature, given that the Proposed Agreed Judgment had not been signed by the Court or entered on the docket in the Current Adversary.   (Current Adv. Dkt. 82).

At the status conference on December 10, 2019, the MDOR announced that although it believed the parties had reached a valid, enforceable settlement of the Current Adversary, it had opted not to file a motion to enforce the settlement agreement and asked the Court to reset all pending matters for a "quicker resolution" of the Current Adversary.   McCoy agreed with the MDOR's proposal, and the Court reset the original hearing on the Motion to Dismiss and all other pending matters to January 17, 2010.

### a.        Proposed Agreed Judgment

McCoy seeks sanctions against the MDOR because the Proposed Agreed Judgment allegedly includes an incorrect amount of unpaid income taxes for the 2015 tax year.   The Proposed Agreed Judgment does not specify the amount McCoy owes in unpaid income taxes for any tax year, including 2015, but purportedly resolves McCoy's unpaid income tax liabilities for the tax year 2015 (as well as the tax years 1993 through 2000, 2009, and 2010) upon payment by McCoy of $77,089.73 in sixty (60) equal monthly installments.   In the Response to Motion to Show Cause II, the MDOR explains that $98.61 remains due for the 2015 tax year and suggests that McCoy may be confused because the MDOR issued two assessments for the 2015 tax year, the first in August 2016 and the second in March 2019.   (Current Adv. Dkt. 93 at 2).   The MDOR asserts that only the first 2015 tax assessment had been paid in full; the second 2015 tax assessment

had not.   At the Hearing, McCoy did not offer any evidence disputing the MDOR's explanation.

The Court finds that the Proposed Agreed Judgment did not contain incorrect information regarding McCoy's tax liabilities for the 2015 tax year and was consistent with the terms of the settlement announced at the prior hearing with one minor exception.[18]   Regardless, it is clear to the Court that the MDOR drafted the Proposed Agreed Judgment in an attempt to formalize the parties' settlement agreement, and as such, it was still subject to revision to correct any errors.   It is also clear to the Court that the MDOR attached the Proposed Agreed Judgment as an exhibit to the Request for Status Conference to show the Court that its attempt effort to comply with the Court's instructions at that hearing, and not to prove that McCoy owed unpaid income taxes for the 2015 tax year.   Indeed, neither the Current Complaint nor the Proposed Amended Complaint mentions McCoy's income tax liabilities for the 2015 tax year.   McCoy does not cite any legal authority in support of her request for sanctions, and the Court is not aware of any such authority that would justify an award of sanctions under these facts given the context in which the MDOR submitted the Proposed Agreed Judgment to the Court and given the absence of evidence indicating that the Proposed Agreed Judgment incorrectly described McCoy's tax liabilities. McCoy's request for sanctions arising out of the Proposed Agreed Judgment should be denied.

### b.    Default Letter

McCoy seeks sanctions against the MDOR for having sent her the Default Letter, which McCoy describes as an unlawful attempt to collect monies from her.   Again, she does not provide any authority in support of her request for relief—no case law, no statutes, and no secondary

---

[18] The Proposed Agreed Judgment states that the first monthly installment payment was due on October 20, 2019 rather than October 25, 2019.

sources.

The MDOR contends that it sent the Default Letter "to preserve its default rights under the settlement." (Current Adv. Dkt. 93 at 4). At that point, the MDOR believed that the parties had entered into a valid settlement agreement under Mississippi law but had not decided yet whether to file a motion to enforce that agreement. *See Madison v. Madison*, 922 So. 2d 832, 835 (Miss. Ct. App. 2006) ("It is elementary that when two parties come to a meeting of the minds, announce to the trial court that an agreement or settlement has been reached, and then recite the details of that agreement to the court on record, a settlement has been formed."). Later, at the status conference held after the MDOR had sent the Default Letter, counsel for the MDOR announced to the Court that it opted to abandon the settlement and proceed with the prosecution of its Motion to Dismiss "for a quicker resolution" of the Current Adversary. McCoy's agreement at the status conference to proceed in this manner could be viewed as a waiver of any rights she may have had against the MDOR to seek sanctions for its issuance of the Default Letter. Regardless, the Court finds that no authority exists that would justify an award of sanctions under these facts.

As noted previously, the automatic stay under § 362(a) in the Current Case terminated on August 8, 2018 when the Court entered the discharge order. (Current Case Dkt. 19; Current Adv. Dkt. 39 at 5). For that reason, the Default Letter dated October 28, 2019, well after entry of the discharge, could not have violated the automatic stay. Moreover, the amount of McCoy's tax liabilities for the tax years 1993 through 2000 is excepted from discharge and the discharge injunction does not prohibit creditors from attempting to collect non-dischargeable debts. For these reasons, McCoy's request for sanctions arising out of the Default Letter should be denied.

D.      **Motion to Reopen**

McCoy asks the Court for permission to reopen her Prior Case to pursue a discharge injunction claim against the MDOR.   McCoy contends that the MDOR has violated the discharge injunction "by continuing to assess and collect penalties for McCoy's assessed tax years 1993-2000 in direct violation of 11 U.S.C. [§] 523(a)(7)."   (Prior Case Dkt. 47).   The MDOR opposes the Motion to Reopen.

A closed bankruptcy case may be reopened pursuant to § 350(b) "to administer assets, to accord relief to the debtor, or for other cause."   11 U.S.C. § 350(b).   Section 350(b) grants the court broad discretion to reopen a closed case when a debtor can show cause as to why the bankruptcy case should be reopened.   *Citizens Bank & Tr. Co. v. Case (In re Case)*, 937 F.2d 1014, 1018 (5th Cir. 1991); 3 COLLIER ON BANKRUPTCY ¶ 350.03 (16th ed. 2019).   Whether a court should grant a motion to reopen depends upon the circumstances of the individual case.   *Id.* When reopening a case would be futile or a waste of judicial resources, such as when the movant cannot obtain the substantive relief that she seeks, the motion to reopen should be denied.   *Chase Auto. Fin., Inc. v. Kinion (In re Kinion)*, 207 F.3d 751 (5th Cir. 2000).

McCoy seeks to reopen the Prior Case so that she may assert a discharge injunction claim against the MDOR.   The allegations supporting her claim are identical to those she asserts in the Motion to Show Cause I filed in the Current Adversary.   Because the Court already has considered and denied the substantive relief McCoy seeks in the Motion to Show Cause I, reopening the Prior Case so that McCoy may pursue the same claim would be futile and a waste of judicial resources. The Court, therefore, finds that the Motion to Reopen should be denied.

## Conclusion

As the Fifth Circuit has noted, "[a]t some point, a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."   *Jacquez v. Procunier*, 801 F.2d 789, 792-93 (5th Cir. 1986). McCoy has pursued the same dischargeability claims in this Court, the District Court, the Fifth Circuit, and the Supreme Court for over ten (10) years.   She has had a fair opportunity to present her best case.   The Court, therefore, concludes that the Tax Debt is non-dischargeable, that allowing McCoy to pursue her dischargeability claims for the 2009 and 2010 tax years would be futile, and that McCoy has failed to establish any violation of the discharge injunction or automatic stay.   Accordingly, the Court dismisses with prejudice the Current Adversary and the Motions to Show Cause and denies with prejudice the Motions to Amend and the Motion to Reopen.   A dismissal or denial without prejudice "would be an inefficient use of the parties' and the court's resources, would cause unnecessary and undue delay, and would be futile."   *Id.*   A separate judgment will be entered in accordance with Federal Rules of Bankruptcy Procedure 7054, 7058, and 9021.

## ##END OF OPINION##